Attorney or Party Name, Address, Telephone & Fax Numbers, and California State Bar Number     FOR COURT USE ONLY

Craig M. Lytle  84430
15028 PRARIE AVENUE
HAWTHORNE CA 90250

310 376-2253  FAX 310 379-9306

*Attorney for* In Pro Per



FILED

MAY 20 2010

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

In re: CRAIG M. M. LYTLE

CHAPTER 7

CASE NUMBER LA 08-19623-ER

DATE:

TIME:

Debtor.    COURTROOM: 1568 15th Floor

## NOTICE OF MOTION FOR:

ORDER TO SELL FREE AND CLEAR AND DISTRIBUTE PROCEEDS PURSUANT TO ORDER
APPROVING SETTLEMENT AGREEMENT

*(Specify name of Motion)*

1. TO: HELEN RYAN FRAZIER, CHAPTER 7 TRUSTEE AND (SEE ATTACHED MOTION FOR OTHER PARTIES) COLLECTOR, W

2. NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3. **Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

| **Hearing Date:** | **Time:** | **Courtroom:** 1568 | **Floor:** 15 |
|---|---|---|---|

- ☒ **255 East Temple Street, Los Angeles**
- ☐ **21041 Burbank Boulevard, Woodland Hills**
- ☐ **3420 Twelfth Street, Riverside**
- ☐ **411 West Fourth Street, Santa Ana**
- ☐ **1415 State Street, Santa Barbara**

4. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response with the Bankruptcy Court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief. *to be assigned*

5. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the Judge's self-calendaring procedures.

Dated: 5/20/10

Law Firm Name

By: _____

Name: _____ Craig M. Lytle
*Attorney for Movant* In Pro Per

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-1.1**

*January 2009*

Notice of Motion (with Hearing) - *Page 2*

**F 9013-1.1**

| | |
|---|---|
| In re  CRAIG M. M. LYTLE | CHAPTER: 7 |
| Debtor(s). | CASE NO.: LA 08-19623-ER |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

C/O Craig M. Lytle
15028 Prarie Avenue, Hawthorne CA 90250

A true and correct copy of the foregoing document described as MOTION FOR ORDER TO SELL FREE AND CLEAR OF JUDGMENTS, LIENS AND ENCUMBRANCES RE COMPROMISE    will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On _____  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):**
On  5/2/10 _____  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on  5/20/10 _____  I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| 5/20/10 | DEBORAH THOMPSON | |
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

**F 9013-1.1**

ADDITIONAL SERVICE INFORMATION (if needed):

SERVED BY OVERNITE MAIL

Judge Ernest M. Robles Suite 1560
US Bankruptcy Court        (AND BY PERSONAL SERVICE AT SUITE 1560)
255 E. Temple Street
Los Angeles. CA 90012

Craig M. Lytle, Trustee Defined Benefit PP
15028 Prairie Avenue
Hawthorne, CA 90250

Los Angeles County Tax Collector
Revenue Enforcement
PO Box 54110
Los Angeles, CA 90054

Walter Steinmann
P.O. Box 9313
Auburn, CA 95604

Jodi Atchison
C/o Craig M. Lytle
A Professional Corporation
215 Pier Avenue, Suite C
Hermosa, Beach, CA 90254

Najah Shariff. Esq.
3018 Federal Building
300 N. Los Angeles. St
Los Angeles, CA 90012

## SERVED BY ELECTRONIC MAIL WITH WRITTEN PERMISSION

- Helen R. Frazer hfrazer@aalrr.com
- Bonnie M Holcomb bonnie.holcomb@doj.ca.gov
- Patrick K McClellan pkellymc@pacbell.net
  Tiel E. Park  Tilamonster@gmail.com

US Trustee ustpregion16.la.ecf@usdoj.gov
Alvin Mar alvin.mar@usdoj.gov
Anita Lytle <kevinlytlelibra@yahoo.com>

## SERVED BY ELECTRONIC MAIL AS A COURTESY

- Kathryn A Meyer kathryn.a.meyer@irscounsel.treas.gov

CRAIG M. LYTLE  084430

CMLL2000@YAHOO.COM
15028 Prairie Avenue
Hawthorne, CA 90278
(310) 376-2253  Fax  (310) 379-9306
In Pro Per
Debtor

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>CRAIG M. LYTLE.<br><br>Debtor.<br><br>HELEN RYAN FRAZER. Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>CRAIG M. LYTLE, ANITA LYTLE, CRAIG M. LYTLE, TRUSTEE OF THE CRAIG M. LYTLE DEFINED BENEFIT PLAN, JODI ATCHISON, STATE OF CALIFORNIA FRANCHISE TAX BOARD, LOS ANGELES COUNTY TAX COLLECTOR, WALTER STEINMANN, UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE and TIEL E. PARK,<br><br>Defendants. | Case No. LA08-19623-ER<br><br>Chapter 7<br>Adv. Pro. No. 09-01055-ER<br><br>**MOTION FOR ORDER TO SELL FREE AND CLEAR AND DISTRIBUTE PROCEEDS PURSUANT TO ORDER APPROVING SETTLEMENT AGREEMENT**<br><br>Date:  June 1,2010<br>Time:  11:00am.<br>Place:  Courtroom 1568<br><br>255 E. Temple St. Los Angeles CA |

**TO THE HONORABLE ERNEST ROBLES, THE OFFICE OF THE UNITED STATES TRUSTEE, HELEN RYAN FRAZER, CHAPTER 7 TRUSTEE, CRAIG M. LYTLE, TRUSTEE OF THE CRAIG M. LYTLE DEFINED BENEFIT PLAN, JODI ATCHISON, STATE OF CALIFORNIA FRANCHISE TAX BOARD, LOS ANGELES COUNTY TAX COLLECTOR, WALTER STEINMANN, UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE, TIEL E. PARK AND INTERESTED PARTIES:**

1

**PLEASE TAKE NOTICE** THAT Craig M. Lytle, Debtor, on behalf of himself and the Chapter 7 trustee), hereby moves the court for entry of an order approving the sale of debtor's residence which he jointly owns with his 93 year old mother free and clear of liens, judgments and encumbrances and distribute sale proceeds pursuant to an order of court approving a compromise between the debtor and the estate. The trustee has indicated that she will support this motion for order to sell free and clear. The debtor as trustee of the pension plan which holds a trust deed against the property has agreed that the DBPP will take back a note of $125,000 to facilitate the sale.

The salient terms of the Sale Agreement are as follows. The purchase price is $470,000 with Debtors Pension Plan DBPP taking back a 1st trust deed for $125,000. Escrow to close 20 days after buyer releases moving expense to seller. Commission of 5%  Sold AS IS. The trustee will be paid the full $75,435 amount due under the terms of the settlement agreement directly from escrow on close.

PLEASE TAKE NOTICE THAT the Motion is made pursuant to sections 363 and 365 of the Bankruptcy Code, Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 6004-2.

PLEASE TAKE FURTHER NOTICE that the Motion is based on the Order Approving Compromise, attached Memorandum of Points and Authorities and Declaration of Craig M. Lytle, the accompanying Motion for Order Shortening Time, the arguments of counsel, and other admissible evidence properly brought before the Court at or before the hearing on this Motion. In addition, the Debtors request that the Court take judicial notice of all documents filed with the Court in these cases.

PLEASE TAKE FURTHER NOTICE THAT if you wish to object to the relief sought by the Motion, you must appear at the hearing hereon and file and serve any responsive pleading prior to the hearing. The failure to timely object may be deemed by the Court to constitute consent to the relief requested herein.

WHEREFORE, the Debtors respectfully request that the Court enter an order as set forth hereinabove.

MEMORANDUM OF POINTS AND AUTHORITIES

INTRODUCTION

[THIS COURT HAS ALREADY ORDERED A SALE FREE AND CLEAR OF LIENS AND SPECIFIED THE DISTRIBUTION OF THE SALE PROCEEDS IN ITS ORDER APPROVING COMPROMISE SO NO MEMORANDUM SHOULD BE NECESSARY – BUT THE FOLLOWING IS INCLUDED OUT OF AN ABUNDANCE OF CAUTION]

The Debtor commenced this case after suffering expense and loss of ability to work and collect fees due to the life threatening illness of his daughter who is now 16.

The Debtors submit that the Court should grant this Motion for the reasons set forth herein and sign an order immediately following the hearing to minimize any further delay and expense to the estates in connection with marketing the Asset. In order to accomplish this sale, the Debtor reduced the price substantially and agreed to take back a large note to facilitate an expeditious sale. Each day until the sale closes represents less than adequate medical care for debtor's daughter and poor living conditions for the joint owner, debtor's 93 year old mother who learned on Mother's day that her son

1   who provided her a place to live and care was now a murder victim Debtors' estates; thus, expedited

2   entry of the Sale Order and waiver of the Rule 6004 stay is of significant importance.

3   II.

4   FACTS

5   The Debtor and his mother jointly own a residence ("Slauson") which is worth about $500,000. The

6   debtor claimed a homestead exemption of $150,000 and an exemption for a 2d trust deed on Slauson

7   of about $160,000 owned by debtor's Defined Benefit Pension ("DBPP"). Since the debtor was only

8   a half owner, there was no equity left for the estate, judgment creditors, and various tax liens. The

9   trustee filed an adversary proceeding to sell the property free and clear and attacked the validity of

10  the DBPP.

11

12

13  Ultimately the adversary was settled where the debtor either paid the trustee $62,500 to then own the

14  property free and clear or the property would be sold and the estate would receive $75,435 and the

15  debtor would receive his homestead exemption amount less the $72,500 and the DBPP would

16  receive $160,000 for the 2d trust deed.. For the extra $13,000, debtor receives two items of his

17  accounts receivable. The order approving compromise settlement is attached as exhibit 2.

18

19

20  All lien holders, the judgment creditors and interested parties were parties to the trustee's adversary

21  proceeding and either defaulted or entered into various agreements with the trustee. None of them

22  objected to the settlement agreement. [They would get nothing if debtor prevailed in the adversary.].

23  As explained in the Motion, the Debtor is endeavoring to expeditiously liquidate this asset.

24

25

26  When the debtor's brother who cared for his 93 year old mother was robbed and shot 4 weeks ago

27  and hospitalized in a coma, and the debtor's daughter was diagnosed with severe eating disorders

28

4

requiring either hospitalization or residential treatment with insurance that would not cover same, the debtor abandoned efforts to keep the residence and listed it for sale to acquire funds needed for his mother's care and his daughter's medical treatment. Debtor's brother died of his injuries a few days ago.

The debtor and his mother have agreed to an AS IS sale for $470,000 as set forth in the Purchase agreement and Final Counter offer attached hereto as exhibits 3 and 4. The buyers have deposited $14,000 into escrow and want to close 20 days after releasing moving expenses to the debtor which they are willing to do immediately.

The proposed sale will resolve and consummate the settlement agreement without further expense or time lost for the estate and allow the debtor to immediately take care of his family obligations.

The Debtor believes it critical that the Motion be heard on shortened notice due to the agreed short time for closing this transaction and the needs of his family.

D.    The Assets and the Sale Agreement

In accordance with Bankruptcy Rule 6004(9(1), sales of property outside the ordinary course of business may be by private sale or by auction. Here, the proposed sale to the Buyer pursuant to the terms of the Sale Agreement will provide tremendous benefit to the estate, the debtor, the joint owner and debtor's family. The Debtor, after consultation with the agent and the trustee and the joint owner have determined that the highest and best value for the asset can be achieved by a sale to the Buyer under the terms and conditions of the Sale Agreement. Under the Sale Agreement, the estate and interested parties including judgment creditors and lien holders receive exactly what was

bargained for in a short period of time and the estate saves the expense and time of marketing the

property.

The estate also benefits as a result of the debtor's DBPP agreeing to take back a trust deed for

$125,000 of the price to enable a timely sale.

A.    Cause Exists to Approve the Sale of the Assets Under Section 363(b) of the Bankruptcy Code

The Debtor or the trustee, after notice and a hearing may use, sell, or lease property, other than in the

ordinary course of business. 11 U.S.C. § 363(b)(l). A debtor's application of its sound business

judgment in the use, sale, or lease of property is subject to great judicial deference. See, e.g., In re

Moore. 110 B.R. 924 (Bankr. C.D. Cal. 1990); In re Canyon P'ship, 55 BR. 520 (Bankr. S.D. Cal.

1985); see also Walter v. Sunwest Bank (In re Walter), 83 BR. 14, 19-20 (BAR 9th Cir. 1988)

("[T}here must be some articulated business justification for using, selling, or leasing the property

outside the ordinary course of business... whether the proffered business justification is sufficient

depends on the facts of the case. As the Second Circuit held in Lionel, the bankruptcy judge should

consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse

interests of the debtor, creditors and equity holders, alike.").

In interpreting section 363(b)( 1) of the Bankruptcy Code, courts have held that a transaction

involving property of the estate generally should be approved where the debtor can demonstrate

"some articulated business justification for using, selling, or leasing property outside of the ordinary

course of business." In re Continental Airlines, Inc.. 780 F.2d 1223, 1226(5th Cir. 1986); accord In

re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); Walter, 83 BR. at 19-20; In re Curlew Valley

Assocs., 14 B.R. 506, 513-14 (Bankr. D. Utah 1981). Among other factors, courts should consider

6

1   the consideration to be paid, the financial condition and needs of the debtor, the qualifications of the

2   buyer, and whether a risk exists that the assets proposed to be sold would decline in value if left in

3   the debtor's possession. See Equity Funding Corp. of Am. v. Fin. Assocs. (In re Equity Funding

4   Corp.), 492 F.2d 793, 794 (9th Cir. 1974) (affirming trial court's finding that the proposed sale of the

5   debtor's assets would be in the best interest of the estate in light of impending deterioration of

6   market value of debtor's assets).

7   The Debtor, the trustee and the joint owner have determined that the sale of the residence, as

8   described herein, is in the best interests of the estate and the debtor's family.

9

10

11  B.      Sale of the Assets Free and Clear of Liens, Claims, Interests, and Encumbrances Pursuant to

12  11 U.S.C. ~ 363(f)

13

14  The Debtor requests that the Court approve the sale of the Assets free and clear of all Interests, with

15  any such Interests to attach to the sale proceeds to be paid to the trustee pursuant to the order

16  approving settlement of controversy. Section 363(f) of the Bankruptcy Code expressly authorizes a

17  debtor to sell property outside the ordinary course of business "free and clear of any interest in such

18  property of an entity" if any one of the five following conditions is met:

19

20

21      (a)     applicable non-bankruptcy law permits sale of such property free and clear of such interest;

22      (b)     such entity consents;

23      (c)     such interest is a lien and the price at which such property is to be sold is greater than the

24  aggregate value of all liens on such property;

25      (d)     such interest is in bona fide dispute; or

26

27

28

1    (e)    such entity could be compelled, in a legal or equitable proceeding, to accept a money

2    satisfaction of such interest.

3

4    II U.S.C. § 363(f). Because section 363f) of the Bankruptcy Code is written in the disjunctive, any

5    one of these five conditions provides authority to sell the Assets free and clear of liens. See Citicorp

6    Homeowners Servs.. Inc. v. Elliot (In re Elliot, 94 BR. 343, 345 (ED. Pa. 1988).

7

8    1.    Parties Asserting Interests in the Assets Consent to the Sale (II U.S.C.§363(0(2))

9

10   **All interested parties should be deemed to have consented to this sale by not objecting to the**

11   **sale terms included in the order approving compromise of controversy.**

12   Under section 363(f)(2) of the Bankruptcy Code, a debtor may sell estate property free and clear of

13   liens, claims, interests, and encumbrances if the entity asserting the interest consents. As noted

14   above, the Debtors are not aware of any holders of any Interests in the Assets. To the extent that any

15   party asserting an Interest receives notice of this Motion and does not file a written objection hereto,

16   such party should be deemed to have consented to the proposed sale of the Assets free and clear of

17   its asserted Interest. See In re Channel One Commc'ns, Inc., 117 B.R. 493, 496 (Bankr. ED. Mo.

18   1990).

19

20

21   2.    Parties Asserting Interests Could Be Compelled to Accept a Money Satisfaction (11 U.S.C.

22   §363(f)(5))

23

24   The Bankruptcy Code provides that assets may be sold free and clear of liens if the holders "could be

25   compelled, in a legal or equitable proceeding, to accept a money satisfaction of [their] interest[s]."

26   11 U.S.C. § 363(f)(5).

27

28

Section 1129(b)(2) of the Bankruptcy Code permits a debtor or trustee to retain property and cram down objecting creditors upon payment of the actual value of the collateral. See, e.g., In re Terrace Chalet Apartments, Ltd., 159 B.R. 821, 829 (ND. Ill. 1993) (holding that a creditor who could be crammed down under section 1129(b) could be compelled to accept a money satisfaction of his interest under section 363(0(5)); In re Hunt Energy Co., Inc., 48 B.R. 472, 485 (Bankr. ND. Ohio 1985) (same); In re Weyland, 63 BR. 854, 860-61 (Bankr. ED. Wisc. 1986) (same); In re Red Oak Farms, Inc., 36 BR. 856, 858 (Bankr. W.D. Mo. 1984). In addition, section 1129(b)(2)(A)(ii) of the Bankruptcy Code permits the sale free and clear of liens with liens to attach to proceeds.

Under section 1129(b)(2) of the Bankruptcy Code, any lienholder could be compelled to accept a monetary satisfaction of its claims. Under section 506(a) of the Bankruptcy Code, the amount of a secured claim is limited to the value of the collateral securing such claim. As a result, a fair price for the collateral itself establishes the maximum amount of a creditor's secured claim. In addition, under section 1129(b)(2)(A)(ii) of the Bankruptcy Code, a secured creditor's collateral may be sold free and clear of liens with liens to attach to proceeds. Thus, under sections 1129(b)(2) and 506(a) of the Bankruptcy Code, holders of Interests could be compelled to accept money satisfaction of their interests and the Assets may therefore be sold free and clear of any such Interests pursuant to section 363(f)(5) of the Bankruptcy Code.

C.    **Request for Waiver of Rule 6004(h) Stay**

In order to allow the immediate realization of value from the Assets consistent with their liquidation goals, the Debtors respectfully request that the order on this Motion be effective immediately, notwithstanding the 10-day stay imposed by Bankruptcy Rule 6004(h).

1

2          As the Debtor expressed above, his goal is to conduct a sale of his residence to consumate the

3    compromise of the adversary proceeding and to acquire funds needed for the welfare of his family in

4    an expeditious manner. An expedient sale process will inure to the benefit of all parties to this estate.

5    Waiver of Bankruptcy Rule 6004(h) will permit the sale to close as early as possible under the

6    circumstances. This sale will also eliminate any incremental cost to the estate to market and sell the

7    property. Thus, it is of significant importance that the Sale Order be entered on an expedited basis

8    and that Bankruptcy Rule 6004(h) is waived so as to permit a prompt closing.

9

10

11   Judgment creditors and lien holders failed to file any objections to the motion to approve

12   compromise, which should effectively collaterally estop any of those parties from objecting to this

13   sale.

14   Dated: May 20 2010

15

16

17                                    By: _____

18                                         CRAIG M. LYTLE

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF CRAIG M. LYTLE

I, CRAIG M. LYTLE, declare as follows:

1. I am an attorney at law duly licensed to practice before all the Courts of this State, am attorney of record for Plaintiffs herein, and if sworn to, I could and would competently testify to the facts stated herein.

2. All facts set forth in this Declaration are based on either my personal knowledge, upon my review of relevant documents, or upon my opinion based upon my experience and knowledge of the Debtor's and his mother's financial condition. If I were called to testify thereto, I could and would competently do so.

3. I submit this declaration in support of the Motion for Order Shortening Time Re: Motion to Sell Residence Free and Clear of Judgments, Liens, and encumbrances and Motione to Sell Free and Clear.

4. The Debtor and his mother jointly own a residence ("Slauson") which is worth less than $500,000. The debtor claimed a homestead exemption and an exemption for a 2d trust deed on Slauson of about $160,000 owned by debtor's Defined Benefit Pension ("DBPP"). Since the debtor was only a half owner, there was no equity left for the estate or judgment creditors and various liens.

5. The trustee filed an adversary proceeding to sell the propety free and clear and attacked the validity of the DBPP. Ultimately the adversary was settled where the debtor either paid the trustee $62,500 to then own the property free and clear -- or the property would be sold and the estate would receive $72,500 and the debtor would receive his homestead exemption amount less the $72,500 and the DBPP would receive $160,000 for the 2d trust deed. For the extra $10,000, debtor receives two items of his accounts receivable. The

BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA CENTRAL BRANCH
CRAIG M. LYTLE vs.   Case No. LA 08-19623-ER     05/16/10
NOTICE TO APPEAR AND PRODUCE AT TRIAL ...

- 1-

CRAIG M. LYTLE
ATTORNEY AT LAW

CRAIG M. LYTLE
ATTORNEY AT LAW

1   compromise acknowledged the validity of the DBPP and its 2d trust deed valued at $160,000.

2   The order approving settlement is attached as exhibit 2.

3       6. All lienholders, the judgment creditors and interested parties were parties to the

4   trustee's adversary proceeding and either defaulted or entered into various agreements with the

5   trustee.  None of them objected to the settlement agreement.  [They would get nothing if debtor

6   prevailed in the adversary.]

7       7. Two months ago this court approved the settlement that provided that I could pay the

8   trustee $62,500 by May 9, 2010 and retain my residence free and clear of liens and if not paid,

9   the trustee would sell the property. I was working on either a loan or a deal to form an LLC

10  to pay the estate and sell the property when the market turned around.

11      8. My mother and I resided in the subject property for many years, but about a year ago

12  she started having memory problems and fell down the stairs a couple of times.  She did not

13  want to live in the down stairs bedroom and we agreed that she would go and live with my

14  brother Reagan Lytle in Kentucky so that could take care of her.  He was on unemployment and

15  intended to apply for caregiver funds.

16      9. Four weeks ago my Brother who cared for our 93 year old mother was robbed and shot and

17  was in critical condition and breathing thru a tracheotomy ventilator and semiconcious in a

18  hospital in Hammond Indiana. That raised numerous problems to solve like immediate care for him

19  and mother.  See 5-6 email from brother Kyle. *Exhibit 1* My mother moved in with my brother Kevin in

20  Georgia but they need to move to a better and larger residence which they need money to

21  accomplish.

22      10. On 4-28-10, I obtained custody of my 16 year old daughter and was required by the

23  Department of Child and Family services to take my daughter to doctor appointments and therapy

24  appointments with 4 medical professionals each week.  I also have to have to take care of her

25  and take her to special classes during the week and for blood tests. Her therapists and doctor

26  and mother all wanted to put her into the hospital or a residential living program for her

27  eating disorders, but the only insurance she has does not cover that nor does it cover the 3

28

1    therapists or one of her 2 doctors.

2       11.  My daughter is not happy living in the subject residence.

3       12.  Based on the fact that I was having trouble in getting a reasonable loan to pay the

4    estate the settlement amount I listed the property for sale for one month about a month ago

5    with Steve Timper of Keller Williams Realty.

6       13.  After my brother was shot, and I became aware of my daughters medical problems, I

7    abandoned attempts to obtain a reasonable loan or a deal in progress to pay the trustee and

8    form an LLC to sell the property later, and decided that I needed to sell the subject

9    property as quickly as possible to obtain funds for my mother and care for my daughter.

10      14.  There have been four open houses on two weekends and a broker open house.  Although

11   many people and realtors have visited, I have received only one offer to purchase and because

12   there is a lot of deferred maintenance, that offer is based on an AS IS condition.

13      15.  My three brothers and my mother are all in favor of selling the property and

14   accepting this offer as evidenced by their emails and my mother's signature on numerous counter

15   offers and the final counter offer.

16      16.  The agreement is for the transaction to close 20 days after the seller releases

17   $10,000 to me for moving expense.  I am completely broke and couldn't even pay full rent timely

18   on my law office this month due the added expense of my daughters situation and my time being

19   taken up with matters other than collecting fees, along with business being slow and clients

20   unable to pay their fees.

21      17.  I agreed to have my pension plan take back a note for $125,000 to facilitate the

22   deal.

23      18.  The situation with mom is exacerbated because although on Friday the 7th Reagan was

24   seemingly improving well, but on Saturday the 8th he died and the case is now a murder case.

25   She cannot return to his care as she wished and sadly received the news on Mother's day.

26      19.  There were no objections to the trustee's motion to approve the settlement agreement,

27   so no judgment creditors or lien holders should complain of the sale because the trustee is

CRAIG M. LYTLE
ATTORNEY AT LAW

28   BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA CENTRAL BRANCH
CRAIG M. LYTLE vs.    Case No. LA 08-19623-ER    05/16/10
NOTICE TO APPEAR AND PRODUCE AT TRIAL ...

1    getting paid in full in short order.

2        20.  A copy of the Order approving compromise of the adversary is attached hereto as

3    Exhibit 2.

4        21.  A copy of the Purchase Agreement is attached hereto as Exhibit 3 and the Final

5    Counter Offer is attached as Exhibit 4.

6        22.  A copy of the trustee's attorney's email stating he supports this request to shorten

7    time and to approve this sale is attached as Exhibit 5.

8        23.  A copy of the receipt for buyers $14,000 deposit into escrow is attached hereto as

9    Exhibit 6.

10

11    I declare under penalty of perjury under the laws of the State of California
      and the United States that the foregoing is true and correct.

12

      Executed on  May 16, 2010 at REDONDO BEACH, California.

13

14

15            CRAIG M. LYTLE

16

17

18

19

20

21

22

23

24

25

26

27

28

BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA CENTRAL BRANCH
CRAIG M. LYTLE vs.   Case No. LA 08-19623-ER      05/16/10
NOTICE TO APPEAR AND PRODUCE AT TRIAL  ...

- 4 -

CRAIG M. LYTLE
ATTORNEY AT LAW

EXHIBIT 1



**Fwd: Reagan's info**

Thursday, May 6, 2010 5:57 AM

**From:** "pst7913@aol.com" <pst7913@aol.com>
**To:** lytlekv@iwvisp.com, cmil2000@yahoo.com

-----Original Message-----
From: pst7913@aol.com
To: kevinlytlelibra@yahoo.com
Sent: Thu, May 6, 2010 7:56 am
Subject: Re: Reagan's info

Good morning Kevin and Craig,

I saw Reagan last night, he is having a procedure done today to remove mucus buildup blocking his left lung from functioning. He can not speak because of the trach. Doctors say he will probably have to work with a speech therapist. He will have to have more surgeries. He was upgraded from intensive care critical to intensive care serious yesterday but is still not out of the woods according to the doctors. He can not sit up but they were going to try to do that with him today. He is on a tremendous amount fo morphine.

He is at St. Margaret Mercy Hospital in Hammond Indiana. ICU phone number is 219-933-2043. Patients do not have phones in their rooms because of the seriousness of their conditions. Room 2310.

I would like to see a copy of Reagans will for Mom. Please email it to me. Also before Mom signs your will and trust for her I would like to see that as well. Thanks.

Craig in answer to your question about Reagan, I don't know.

Kyle

-----Original Message-----
From: Kevin Lytle <kevinlytlelibra@yahoo.com>
To: pst7913@aol.com
Sent: Thu, May 6, 2010 7:14 am
Subject: Reagan's info

Please supply me with the hospital's name, telephone number and
Reagan's room number ASAP.

The Times of Northwest Indiana Mobile Edition                                    http://munster-me.zebramm.com/articles/197835851

 nwi.com

## Lansing hotel shooting victim dies

By Jeff Burton - Jeff.burton@nwi.com, (219) 933-3246

LANSING | A Kentucky man found shot in his hotel room last month, died Saturday morning from his injuries, police said.

According to a report from the Lansing Police Department, Reagan Lytle, 54, of Owensboro, Ky., died at an area hospital Saturday morning, a result of the April 17 shooting at the Days Inn, 2249 Bernice Road.

Police said they believed Lytle, who was able to provide officers with little information on the offenders and what took place that night, was the victim of an apparent armed robbery.

Officers said Lytle was in Lansing for the weekend visiting family and it appears Lytle returned to his room at the wrong time. According to police reports, Lytle was targeted by two offenders, a man and a woman both believed to be in their 20s. Shortly after 8:30 p.m. on April 17, the male suspect made his way into Lytle's room and demanded money. He took Lytle's cellular telephone and a small amount of cash from his wallet and shot Lytle in the abdomen with a handgun.

"Nobody should lose their life over a small amount of cash," Detective Sgt. Scott Bailey said.

Surveillance footage from the hotel and nearby businesses captured the two suspects fleeing the scene in a blue 1998 to 2002 Ford Escort ZX2 sedan.

Anyone with any information on the case or the car in question is asked to call Bailey at (708) 895-7106 or Detective Wilson Pierce at (708) 895-7159.

Email this

The Times of Northwest Indiana >> Article

Back to Top

Help

Copyright 2010 The Times of Northwest Indiana
Powered By Zebra Mobile

STM :: Woman charged in Lansing slaying          http://www.southtownstar.com/news/2282204,lansing-shooting-charge...

Back to regular view • Print this page

## Woman charged in Lansing slaying
(http://www.southtownstar.com/news/2282204,lansing-shooting-charges-0517.article)

May 17, 2010

**SUN-TIMES MEDIA WIRE**

A 24-year-old Northwest Indiana woman has been charged in the fatal shooting of a Kentucky man at a Lansing motel in April.

Reagan Lytle, 54, of Owensboro, Ky., was the victim of an armed robbery and shooting at a Days Inn in Lansing on April 17. He died May 8 in Hammond, Ind.

The investigation by the Lansing Police Department and the South Suburban Major Crimes Task Force resulted in the arrest of Lavashia Conner, 24, of Crown Point, Ind., Lansing police said.

Conner was charged with armed robbery and first-degree murder.

In addition, a nationwide arrest warrant on first-degree murder charges has been issued for Lawrence K. Coffee of Chicago, police said. Coffee, 27, has black hair, brown eyes, is about 6-foot-1 and weighs about 170 pounds.

A recognizable feature Coffee has is a tattoo of a pair of praying hands on the right side of his neck, police said.

Anyone who may encounter him is advised to contact their local authorities immediately.

**Affiliates:** YourSeason.com | RogerEbert.com | SearchChicago - Autos | SearchChicago - Homes | Local Area Jobs | Public Record Search | Centerstage

**Express Links:** Obituaries | TV Listings | Video | Yellow Pages | Submissions | Eating In | Restaurant Reviews | Advertising | Media Kit
© Copyright 2010 Sun-Times Media, LLC | Terms of Use • Privacy Policy • Submission Guidlines • About Our Ads

Lansing motel shooting suspect shot

Punching man visiting family was shot in April 17 robbery

- Story
- Discussion

By Jeff Burton - jeff.burton@nwi.com, (219) 933-3246 | Posted: Sunday, May 9, 2010 12:05 am | (8)
Comments

LANSING | A Kentucky man found shot in his hotel room last month, died Saturday morning from his
injuries, police said.

According to a report from the Lansing Police Department, Reagan Lytle, 54, of Owensboro, Ky., died at
an area hospital Saturday morning, a result of the April 17 shooting at the Days Inn, 2249 Bernice Road.

Police said they believed Lytle, who was able to provide officers with little information on the
offenders and what took place that night, was the victim of an apparent armed robbery.

Officers said Lytle was in Lansing for the weekend visiting family and it appears Lytle returned to his
room at the wrong time. According to police reports, Lytle was targeted by two offenders, a man and a
woman both believed to be in their 20s. Shortly after 8:30 p.m. on April 17, the male suspect made his
way into Lytle's room and demanded money. He took Lytle's cellular telephone and a small amount of cash
from his wallet and shot Lytle in the abdomen with a handgun.

"Nobody should lose their life over a small amount of cash," Detective Sgt. Scott Bailey said.

Surveillance footage from the hotel and nearby businesses captured the two suspects fleeing the scene in
a blue 1998 to 2002 Ford Escort ZX2 sedan.

Anyone with any information on the case or the car in question is asked to call Bailey at (708) 895-7106
or Detective Wilson Pierce at (708) 895-7159.

PROVIDED PHOTO | Lansing police are asking the public to help identify the two suspects in this security
photo, related to the April 17 shooting that left a Kentucky man dead. Reagan Lytle, 54, of Owensboro,
Ky., died Saturday from injuries suffered in the shooting at the Days Inn, 2249 Bernice Road.

One arrested in fatal Lansing hotel shooting

Second, possibly armed, suspect still at large

- Story
- Discussion
- Image (1)

By Chas Reilly - chas.reilly@nwi.com, (219) 662-5324 | Posted: Sunday, May 16, 2010 12:05 am | (5)
Comments

Font Size:
    Default font size
    Larger font size

Loading…

- Lavashia Conner
- Lawrence K. Coffee

LANSING | A 24-year-old Indiana woman has been charged in the fatal shooting of a Kentucky man last
month in a Lansing motel, but another suspect remains at large, police said Saturday.

Lavashia Conner, 24, of Crown Point, was arrested and has been charged with first-degree murder and
armed robbery, Lansing Detective Lt. Dan Sylvester said in a news release. Conner is set to appear this
morning at the Cook County Courthouse in Markham for a bond hearing.

Meanwhile, a nationwide arrest warrant has been issued for Lawrence K. Coffee, 27, of Chicago, police
said.

Coffee, who may have fled the area, has a history of violence and may be armed, police said. He is
described as 6 foot 1 inch tall, 170 pounds with black hair and brown eyes.

Lansing police advise anyone who encounters the man to contact local police.

An April 17 robbery and shooting at the Days Inn, 2249 Bernice Road, killed Reagan Lytle, 54, of
Owensboro, Ky. Lytle was in Lansing to visit family.

According to initial police reports, Lytle was targeted by a man and a woman. The male suspect made his
way into Lytle's room and demanded money. He took Lytle's cell phone and a small amount of cash from his

Fourth, in the event the $62,500 payment is not made to the Trustee within the sixty (60) days, Debtor and Anita Lytle will have forty-five (45) days from written notice within which to vacate the Subject Property.

Fifth, in the event the payment is not made within sixty (60) days and the Trustee sells the subject property as provided for herein, the distribution of the proceeds of sale will be made with the following priorities:

1) First, the normal and necessary costs of sale (commissions, title insurance, escrow charges, etc.) will be paid through escrow;

2) Second, $160,000 will be paid in full satisfaction of the Craig M. Lytle Defined Benefit Pension Plan Trust Deed ("DBPP Deed of Trust) and that deed of trust will be reconveyed;

3) One half of the remaining proceeds of sale, after payment of all costs of sale and satisfaction of the DBPP Deed of Trust, will be distributed by escrow to Anita Lytle on account of her 50% ownership interest;

4) From the remaining proceeds on hand, the estate will receive the sum of $75,435 paid directly from escrow for administration by the Trustee in the Chapter 7 case;

5) The balance of the sales proceeds will be disbursed to Debtor on account of his homestead exemption and Debtor agrees to accept said sum in full satisfaction of his homestead exemption;[1]

6) The Trustee will abandon to Debtor the following receivables:

a) Dewayne Abernathy        $22,987

b) Larry West               $ 2,883

006394        5700400064000013

1

Total        $25,870

2

Sixth, the parties agree that the DBPP is a valid and enforceable lien against the Subject

3

Property in the total amount, including principal and interest, of $160,000.

4

5

###

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    DATED: March 10, 2010

United States Bankruptcy Judge

27

28

---

[1] Nothing contained herein shall constitute a waiver of the rights, if any, of the Franchise Tax Board pursuant to 11 U.S.C. 522(c)(2)(B).

3        Order Approving Compromise

EXHIBIT 3

## CALIFORNIA
## RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### For Use With Single Family Residential Property — Attached or Detached
(C.A.R. Form RPA-CA, Revised 4/10)

CALIFORNIA ASSOCIATION OF REALTORS®

Date _April 30, 2010_

1. **OFFER:**
   A. THIS IS AN OFFER FROM ____FAHIM MANSOUR, WESAM HIJAZIM, OMAR CHAHINE____ ("Buyer").
   B. THE REAL PROPERTY TO BE ACQUIRED is described as _1006 SLAUSON LN, REDONDO BEACH CA 90278_
      , Assessor's Parcel No. _4158002029_ , situated in
      _REDONDO BEACH_ , County of _LOS ANGELES_ , California, ("Property").
   C. THE PURCHASE PRICE offered is _Four Hundred Seventy Thousand_
      (Dollars $ _470,000.00_ ).
   D. CLOSE OF ESCROW shall occur on _____ (date) (or ☒ _12_ Days After Acceptance).

2. **AGENCY:**
   A. **DISCLOSURE:** Buyer and Seller each acknowledge prior receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. **POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer representation agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.
   C. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
      Listing Agent _KELLER WILLIAMS Palos Verdes_ (Print Firm Name) is the agent
      of (check one): ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
      Selling Agent _LEADERS REALTY INC_ (Print Firm Name) (if not the same as the
      Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of .......................................... $ _14,100.00_
      (1) Buyer shall deliver deposit directly to Escrow Holder by personal check, ☐ electronic funds transfer, ☐ Other
          _____ within 3 business days after acceptance (or ☐ Other _____ );
      OR (2) (if checked) ☐ Buyer has given the deposit by personal check (or ☐ _____ )
          to the agent submitting the offer (or to ☐ _____ ).
          made payable to _____ . The deposit shall be held
          uncashed until Acceptance and then deposited with Escrow Holder (or ☐ into Broker's trust account) within 3 business days after Acceptance (or ☐ Other _____ )
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of ......... $ _____
      within _____ Days After Acceptance, or ☐ _____
      If a liquidated damages clause is incorporated into this Agreement, Buyer and Seller shall sign a separate liquidated damages clause (C.A.R. Form RID) for any increased deposit at the time it is deposited.
   C. **LOAN(S):**
      (1) **FIRST LOAN:** in the amount of .......................................... $ _250,000.00_
          This loan will be conventional financing or, if checked, ☐ FHA, ☐ VA, ☐ Seller (C.A.R. Form SFA),
          ☐ assumed financing (C.A.R. Form PAA), ☐ Other _____ . This loan shall be at a fixed
          rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
          Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (2) ☐ **SECOND LOAN:** in the amount of .......................................... $ _220,000.00_
          This loan will be conventional financing or, if checked, ☐ Seller (C.A.R. Form SFA), ☒ assumed financing
          (C.A.R. Form PAA), ☐ Other _____ . This loan shall be at a fixed rate not to exceed
          _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of
          the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (3) **FHA/VA:** For any FHA or VA loan specified above, Buyer has 17 (or ☐ _____ ) Days After Acceptance
          to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or repair. Seller has no obligation to pay for repairs or satisfy lender requirements unless otherwise agreed in writing.
   D. **ADDITIONAL FINANCING TERMS:** _____
   E. **BALANCE OF PURCHASE PRICE OR DOWN PAYMENT:** in the amount of .................... $ _(14,100.00)_
      to be deposited with Escrow Holder within sufficient time to close escrow.
   F. **PURCHASE PRICE (TOTAL):** .......................................... $ _470,000.00_

Buyer's Initials ( _FM_ ) ( _WH_ ) ( _U.H_ )          Seller's Initials ( _____ ) ( _____ )

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

**RPA-CA REVISED 4/10 (PAGE 1 OF 8)**

Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 8)**

| Agent: Maria Asusen Mendoza | Phone: 213.618.1251 | Fax: 213.652.1251 | Prepared using zipForm® software |
|---|---|---|---|
| Broker: Leaders Realty Inc. 384 S. COUNTRY HILL RD ANAHEIM HILLS, CA 92808 | | | |

DocuSign Envelope ID: 27B4FB81-2F0E-4CE6-A7...

*1006 SLAUSON LN*
Property Address: *REDONDO BEACH, CA   90278*                              Date: *April 30, 2010*

**G. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 3H(1)) shall, within **7 (or** ☐ _____ **) Days After Acceptance,** Deliver to Seller written verification of Buyer's down payment and closing costs. (If checked, ☐ verification attached.)

**H. LOAN TERMS:**
  **(1) LOAN APPLICATIONS: Within 7 (or** ☐ _____ **) Days After Acceptance,** Buyer shall Deliver to Seller a letter from lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in 3C above. (If checked, ☐ letter attached.)
  **(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Obtaining the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. Buyer's contractual obligations to obtain and provide deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.
  **(3) LOAN CONTINGENCY REMOVAL:**
    **(i) Within 17 (or** ☐ _____ **) Days After Acceptance,** Buyer shall, as specified in paragraph 14, in writing remove the loan contingency or cancel this Agreement;
    **OR (ii)** (if checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.
  **(4)** ☒ **NO LOAN CONTINGENCY** (If checked): Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or, if checked, ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the specified purchase price. If there is a loan contingency, Buyer's removal of the loan contingency shall be deemed removal of this appraisal contingency (or, ☐ if checked, Buyer shall, as specified in paragraph 14B(3), in writing remove the appraisal contingency or cancel this Agreement within **17 (or** _____ **) Days After Acceptance).** If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), in writing remove the appraisal contingency or cancel this Agreement within **17 (or** _____ **) Days After Acceptance.**
**J.** ☐ **ALL CASH OFFER** (If checked): Buyer shall, within **7 (or** ☐ _____ **) Days After Acceptance,** Deliver to Seller written verification of sufficient funds to close this transaction. (If checked, ☐ verification attached.)
**K. BUYER STATED FINANCING:** Seller has relied on Buyer's representation of the type of financing specified (including but not limited to, as applicable, amount of down payment, contingent or non contingent loan, or all cash). If Buyer seeks alternate financing, (i) Seller has no obligation to cooperate with Buyer's efforts to obtain such financing, and (ii) Buyer shall also pursue the financing method specified in this Agreement. Buyer's failure to secure alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. ALLOCATION OF COSTS** (If checked): Unless otherwise specified in writing, **this paragraph only** determines who is to pay for the inspection, test or service ("Report") mentioned; it **does not determine** who is to pay for any work recommended or identified in the Report.

**A. INSPECTIONS AND REPORTS:**
  **(1)** ☐ Buyer ☒ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Wood Pest Report") prepared by *SELLERS CHOICE OF SERVICE* a registered structural pest control company.
  **(2)** ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems pumped and inspected _____
  **(3)** ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _____
  **(4)** ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report prepared by *SELLER CHOICE OF SERVICE* _____
  **(5)** ☐ Buyer ☐ Seller shall pay for the following inspection or report _____
  **(6)** ☒ Buyer ☐ Seller shall pay for the following inspection or report *HOME INSPECTION REPORT* _____

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**
  **(1)** ☒ Buyer ☐ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless exempt.
  **(2)** ☒ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law. _____

**C. ESCROW AND TITLE:**
  **(1)** ☒ Buyer ☒ Seller shall pay escrow fee *EACH PAY THEIR HALF.  BUYERS CHOICE OF TITLE AND ESCROW*
    Escrow Holder shall be _____
  **(2)** ☐ Buyer ☒ Seller shall pay for **owner's** title insurance policy specified in paragraph 12E _____
    Owner's title policy to be issued by _____
    (Buyer shall pay for any title insurance policy insuring Buyer's **lender,** unless otherwise agreed in writing.)

**D. OTHER COSTS:**
  **(1)** ☐ Buyer ☒ Seller shall pay County transfer tax or fee *LOS ANGELES COUNTY* _____
  **(2)** ☐ Buyer ☐ Seller shall pay City transfer tax or fee *REDONDO BEACH* _____
  **(3)** ☐ Buyer ☐ Seller shall pay Homeowner's Association ("HOA") transfer fee _____
  **(4)** ☐ Buyer ☐ Seller shall pay HOA document preparation fees _____
  **(5)** ☐ Buyer ☐ Seller shall pay for any private transfer fee _____
  **(6)** ☐ Buyer ☐ Seller shall pay the cost, not to exceed $ _____, of a one-year home warranty plan,
    issued by _____, with the following optional coverages:
    ☐ Air Conditioner ☐ Pool/Spa ☐ Code and Permit upgrade ☐ Other: _____
    Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
  **(7)** ☐ Buyer ☐ Seller shall pay for _____
  **(8)** ☐ Buyer ☐ Seller shall pay for _____

Buyer's Initials ( _____ )( _____ )                     Seller's Initials ( _____ )( _____ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS® INC.
RPA-CA REVISED 4/10 (PAGE 2 OF 8)

Reviewed by _____ Date _____

*1006 slauson*

DocuSign Envelope ID: 27D4FB81-2F9E-4CE6-A...

1006 SLAUSON LN
Property Address: __REDONDO BEACH, CA  90278__ _____ Date: __April 30, 2010__

**5. CLOSING AND POSSESSION:**
  **A.** Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
  **B. Seller-occupied or vacant property:** Possession shall be delivered to Buyer at 5 PM or ( ☐ _____ ☐ AM ☐ PM), on the date of Close Of Escrow; ☐ on _____; or ☐ no later than _____ Days After Close Of Escrow. If transfer of title and possession do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement (C.A.R. Form PAA, paragraph 2); and (ii) consult with their insurance and legal advisors.
  **C. Tenant-occupied property:**
      **(i)** Property shall be vacant at least 5 (or ☐ _____ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. Note to Seller: **If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**
      OR **(ii)** (if checked) ☐ Tenant to remain in possession. (C.A.R. Form PAA, paragraph 3)
  **D.** At Close Of Escrow, (i) Seller assigns to Buyer any assignable warranty rights for items included in the sale, and (ii) Seller shall Deliver to Buyer available Copies of warranties. Brokers cannot and will not determine the assignability of any warranties.
  **E.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**6. STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
  **A. (1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer, if required by Law: (i) Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and (ii) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or SSD).
      **(2)** Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.
      **(3)** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**
      **(4)** If any disclosure or notice specified in 6A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days After Delivery** in person, or **5 Days After Delivery** by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.
      **(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.**
  **B. NATURAL AND ENVIRONMENTAL HAZARDS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) Deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.
  **C. WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law. (C.A.R. Form AS or QS).
  **D. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

**7. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
  **A. SELLER HAS: 7 (or ☐ _____ ) Days** After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or SSD).
  **B.** If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ☐ _____ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

**8. ITEMS INCLUDED IN AND EXCLUDED FROM PURCHASE PRICE:**
  **A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in 8B or C.
  **B. ITEMS INCLUDED IN SALE:**
      **(1)** All EXISTING fixtures and fittings that are attached to the Property;
      **(2)** EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; (if checked ☐ stove(s), ☐ refrigerator(s); and
      **(3)** The following additional items: _____
      **(4)** Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.
      **(5)** All items included shall be transferred free of liens and without Seller warranty.
  **C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, audio and video components (such as flat screen TVs and speakers) are excluded if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component is attached to the Property; and _____

Buyer's Initials ( _____ ) ( _____ )    Seller's Initials ( _____ ) ( _____ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**RPA-CA REVISED 4/10 (PAGE 3 OF 8)**    | Reviewed by _____ Date _____ |

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 8)**    1006 slauson

DocuSign Envelope ID: 27B4FB81-2F0E-4CE6-A...    C8C99E0FEBAF

*1006 SLAUSON LN*
Property Address: REDONDO BEACH, CA  90278_____ Date: April 30, 2010_____

9. **CONDITION OF PROPERTY:** Unless otherwise agreed: (i) the **Property is sold (a) in its PRESENT physical ("as-is")** condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Seller by Close Of Escrow.
   A. Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
   B. Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
   C. **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

10. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
   A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: **(i)** inspect for lead-based paint and other lead-based paint hazards; **(ii)** inspect for wood destroying pests and organisms; **(iii)** review the registered sex offender database; **(iv)** confirm the insurability of Buyer and the Property; and **(v)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.
   B. Buyer shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 14B, complete Buyer Investigations and, either remove the contingency or cancel this Agreement; and (ii) give Seller, at no cost, complete Copies of all Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
   C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
   D. **Buyer indemnity and Seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs of Buyer's investigations. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination or cancellation of this Agreement and Close of Escrow.

11. **SELLER DISCLOSURES; ADDENDA; ADVISORIES; OTHER TERMS:**
   A. **Seller Disclosures (if checked):** Seller shall, within the time specified in paragraph 14A, complete and provide Buyer with a:
   
   | ☑ Seller Property Questionnaire (C.A.R. Form SPQ) | **OR** | ☐ Supplemental Contractual and Statutory Disclosure (C.A.R. Form SSD) |
   |---|---|---|

   B. **Addenda (if checked):**    ☐ Addendum # _____  (C.A.R. Form ADM)
   
   | ☑ Wood Destroying Pest Inspection and Allocation of Cost Addendum (C.A.R. Form WPA) | |
   |---|---|
   | ☐ Purchase Agreement Addendum (C.A.R. Form PAA) | ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) |
   | ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

   C. **Advisories (if checked):**    ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
   
   | ☐ Probate Advisory (C.A.R. Form PAK) | ☒ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
   |---|---|
   | ☐ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) |

   D. **Other Terms:**

12. **TITLE AND VESTING:**
   A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report, which shall include a search of the General Index. Seller shall within 7 Days After Acceptance give Escrow Holder a completed Statement of Information. The preliminary report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B.
   B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: **(i)** monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.
   C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
   D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.
   E. Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, survey requirements, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

13. **SALE OF BUYER'S PROPERTY:**
   A. This Agreement is NOT contingent upon the sale of any property owned by Buyer.
   **OR B.** ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

Buyer's Initials [___][___]

Seller's Initials (_____) (_____)

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC
**RPA-CA REVISED 4/10 (PAGE 4 OF 8)**

Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 8)**    *1006 slauson*

DocuSign Envelope ID: 275AFE57-250E-10E9-A7...

Property Address: __1976 GRAYSON LN__, REDONDO BEACH, CA _90278_ . . . . . . . . . . . . . . . . . . . . . . . . . . . Date: _April 30, 2010_

14. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

A. **SELLER HAS:** 7 (or □ _____3____ ) Days After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 4, 6A, B and C, 7A, 9A, 11A and B. Buyer may give Seller a Notice to Seller to Perform (C.A.R. Form NSP) if Seller has not Delivered the items within the time specified.

B. (1) **BUYER HAS:** 17 (or ☒ _____7____ ) Days After Acceptance, unless otherwise agreed in writing, to:
   (i) complete all Buyer Investigations; approval all disclosures, reports and other applicable information, which Buyer receives from Seller; and approval all matters affecting the Property; and
   (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures Delivered by Seller in accordance with paragraph 6A.

   (2) Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.

   (3) Within the time specified in 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller either (i) a removal of the applicable contingency (C.A.R. Form CR), or (ii) a cancellation (C.A.R. Form CC) of this Agreement based upon a contingency or Seller's failure to Deliver the specified items. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in 14A, then Buyer has 5 (or □ _____ ) Days After Delivery of any such items, or the time specified in 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

   (4) **Continuation of Contingency:** Even after the end of the time specified in 14B(1) and before Seller cancels this Agreement, if at all, pursuant to 14C, Buyer retains the right to either (i) in writing remove remaining contingencies, or (ii) cancel this Agreement based upon a remaining contingency or Seller's failure to Deliver the specified items. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to 14C(1).

C. **SELLER RIGHT TO CANCEL:**
   (1) **Seller right to Cancel; Buyer Contingencies:** If, within the time specified in this Agreement, Buyer does not, in writing, Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize return of Buyer's deposit.

   (2) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first Delivering to Buyer a NBP may cancel this Agreement for any of the following reasons: (i) if Buyer fails to deposit funds as required by 3A or 3B; (ii) if the funds deposited pursuant to 3A or 3B are not good when deposited; (iii) if Buyer fails to Deliver a notice of FHA or VA costs or terms as required by 3C(3) (C.A.R. Form FVA); (iv) if Buyer fails to Deliver a letter as required by 3H; (v) if Buyer fails to Deliver verification as required by 3G or 3J; (vi) if Seller reasonably disapproves of the verification provided by 3G or 3J; (vii) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 6A(2); or (viii) if Buyer fails to sign or initial a separate liquidated damage form for an increased deposit as required by paragraphs 3B and 25. In such event, Seller shall authorize return of Buyer's deposit.

   (3) **Notice To Buyer To Perform:** The NBP shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 2 (or □ _____ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet an obligation specified in 14C(2).

D. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall with respect to that contingency or cancellation right conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections or for inability to obtain financing.

E. **CLOSE OF ESCROW:** Before Seller or Buyer may cancel this Agreement for failure of the other party to close escrow pursuant to this Agreement, Seller or Buyer must first give the other a demand to close escrow (C.A.R. Form DCE).

F. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A Buyer or Seller may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

15. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

16. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or _____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 9; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are a current lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are a current lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

Buyer's Initials ( _____ ) ( _____ ) ( _____ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

RPA-CA REVISED 4/10 (PAGE 5 OF 8)

Seller's Initials ( _____ ) ( _____ )

Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 8)**

1006 slauson

DocuSign Envelope ID: 27B4FB83-2F0E-4CE6-A...

1006 SLAUSON LN
Property Address: REDONDO BEACH, CA   90278                                      Date: April 30, 2010

18. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

19. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

20. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

21. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 26A.

22. **DEFINITIONS:** As used in this Agreement:
   A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
   B. **"C.A.R. Form"** means the specific form referenced or another comparable form agreed to by the parties.
   C. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded.
   D. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
   E. **"Days"** means calendar days. However, After Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
   F. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
   G. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
   H. **"Deliver", "Delivered" or "Delivery"**, regardless of the method used (i.e. messenger, mail, email, fax, other), means and shall be effective upon (i) personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in paragraph D of the section titled Real Estate Brokers on page 8; OR (ii) if checked, ☐ per the attached addendum. (C.A.R. Form RDN).
   I. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other party.
   J. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
   K. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
   L. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

23. **BROKER COMPENSATION:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

24. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 3, 4, 6C, 11B and D, 12, 13B, 14F, 17, 22, 23, 24, 28, 30, and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 23, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out of Buyer's or Seller's funds, or both, as applicable, the respective Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not specifically referenced above, in the specified paragraphs, are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.
   B. A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐ _____
   _____). Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.
   C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraphs 23 and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 23, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement. Escrow Holder shall immediately notify Brokers: **(i)** if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if either Buyer or Seller instruct Escrow Holder to cancel escrow.
   D. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **2** business days after mutual execution of the amendment.

Buyer's Initials ( PH ) ( DC ) ( WH )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**RPA-CA REVISED 4/10 (PAGE 6 OF 8) Print Date**

Seller's Initials ( _____ ) ( _____ )

Reviewed by _____ Date _____



1006 SLAUSON LN
Property Address: REDONDO BEACH, CA  90278                    Date: April 30, 2010

**25. LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIME OF THE INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID).

| Buyer's Initials | / | | Seller's Initials | / |
|---|---|---|---|---|

**26. DISPUTE RESOLUTION:**

**A. MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Buyer and Seller also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 26C.

**B. ARBITRATION OF DISPUTES:**
Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. Buyer and Seller also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 26C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

| Buyer's Initials | / | | Seller's Initials | / |
|---|---|---|---|---|

**C.** ADDITIONAL MEDIATION AND ARBITRATION TERMS:
    **(1) EXCLUSIONS:** The following matters shall be excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation and arbitration provisions.
    **(2) BROKERS:** Brokers shall not be obligated or compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.

**27. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all parties initial such paragraph(s), a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**28. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the laws of the State of California. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

Buyer's Initials ( )( )                              Seller's Initials ( )( )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

RPA-CA REVISED 4/10 (PAGE 7 OF 8)

| Reviewed by | Date |
|---|---|

1006 slauson

EXHIBIT 4

13-MAY-2010 08:03 From:

P.1/2

# COUNTER OFFER No. Seven

CALIFORNIA
ASSOCIATION
OF REALTORS®

For use by Seller or Buyer. May be used for Multiple Counter Offer.
(C.A.R. Form CO, Revised 10/04)

Date **May 3, 2010** , at **Redondo Beach** , California.
This is a counter offer to the: [X] California Residential Purchase Agreement, [ ] Counter Offer, or [ ] Other ("Offer"),
dated **April 30, 2010** , on property known as **1006 Slauson Lane, Redondo Beach** ("Property"),
between **Fahim Mansour, Wesam Hijazin, Omar Chahine** ("Buyer") and
**Craig M Lyrtle, Anita S Lyrtle** ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.
   C. *FINAL COUNTER OFFER WHICH SUPERCEDES ALL PRIOR COUNTER OFFERS*
      *Purchase Price $470,000 Buyer to pay Cash of any portion of the purchase price not*
      *carried back by the seller.*
      *Seller to carry back a Loan for $125,000. buyer interest rate for seller carry back*
      *loan amount of $125, 000 at market rate of 5%. Sellers note to be all due in one*
      *year in the name of Craig M. Lytle Law Corporation Defined Benefit Pension Plan.*
   D. The following attached supplements are incorporated into this Counter Offer: [X] Addendum No. **Four**  [ ]

2. **RIGHT TO ACCEPT OTHER OFFERS:** Seller has the right to continue to offer the Property for sale or for other transaction, and to accept any other offer at any time prior to notification of acceptance, as described in paragraph 3. If this is a Seller Counter Offer, Seller's acceptance of another offer prior to Buyer's acceptance and communication of notification of this Counter Offer, shall revoke this Counter Offer.

3. **EXPIRATION:** This Counter Offer shall be deemed revoked and the deposits, if any, shall be returned unless this Counter Offer is signed by the Buyer or Seller to whom it is sent and a Copy of the signed Counter Offer is personally received by the person making this Counter Offer or
   who is authorized to receive it, by 5:00 PM on the third Day after this Counter Offer is made or, (if checked) by [ ]
   (date), at _____ [ ] AM [ ] PM. This Counter Offer may be executed in counterparts.

4. [ ] (If checked:) MULTIPLE COUNTER OFFER: Seller is making a Counter Offer(s) to another prospective buyer(s) on terms that may or may not be the same as in this Counter Offer. Acceptance of this Counter Offer by Buyer shall not be binding unless and until it is subsequently re-Signed by Seller in paragraph 7 below and a Copy of the Counter Offer Signed in paragraph 7 is personally received by Buyer or by _____ , who is authorized to receive it, by 5:00PM
   on the third Day after this Counter Offer is made or, (if checked) by _____ (date), at _____ [ ] AM [ ] PM.
   Prior to the completion of all of those events, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.

5. **OFFER:** [ ] BUYER OR [X] SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.
   _____  Date _____
   _____  Date **May 10, 2010**

6. **ACCEPTANCE: I/WE** accept the above Counter Offer (if checked [X] SUBJECT TO THE ATTACHED COUNTER OFFER) and acknowledge receipt of a Copy.
   _____  Date **5-11-2010**  Time **3:20** [ ] AM [X] PM
   _____  Date **5-11-2010**  Time **3:20** [ ] AM [X] PM

7. **MULTIPLE COUNTER OFFER SIGNATURE LINE:** By signing below, Seller accepts this Multiple Counter Offer.
   NOTE TO SELLER: Do NOT sign in this box until after Buyer signs in paragraph 6. (Paragraph 7 applies only if paragraph 4 is checked.)
   _____  Date _____  Time _____ [ ] AM [ ] PM
   _____  Date _____  Time _____ [ ] AM [ ] PM

8. (____/____) (Initials) Confirmation of Acceptance: A Copy of Signed Acceptance was personally received by the maker of the Counter Offer, or that person's authorized agent as specified in paragraph 3 (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent as specified in paragraph 4) on (date) _____ , at _____ [ ] AM [ ] PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by the the maker of the Counter Offer, or that person's authorized agent (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent) whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

CO REVISED 10/04 (PAGE 1 OF 1)

**COUNTER OFFER (CO PAGE 1 OF 1)**

Agent: **Steve Timper**  Phone: **(310) 993-7957**  Fax: **(310) 601-1823**  Prepared using zipForm® software
Broker: **Home Team Realty 23900 Hawthorne Blvd. #130 Torrance, CA 90505**



CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM**

(C.A.R. Form ADM, Revised 10/01)

No. _Four_

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☑ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property Purchase Agreement, ☑ other _Final Counter Offer #7_

dated _May 9, 2010_ , on property known as _1006 Slauson Lane, Redondo Beach_

in which _Fahim Mansour, Wesam Hijazim, Omar Chahine_ is referred to as ("Buyer/Tenant")

and _Craig M Lytle, Anita S Lytle_ is referred to as ("Seller/Landlord").

_Payment to be amortized over 30 years. NO Balloon, NO Zero Interest, , amortized for 30 year period. 12 monthly payments of $671.03. Said note will be transferable, and be all due on sale or transfer of the property._

_Title Co. Nations Title, Winston Garcia. Escrow to be Seller's Choice. Buyer to pay for Owners Title Insurance._

_Property is sold "As - Is" in its present condition. Buyer waives any right to complain or claim damages as a result of condition of Property in return for price reduction for repairs and agrees to rely on his own inspection as to condition No Termite or any other repairs._

_Seller to turn in keys and property vacant at close of ESCROW._

_Buyer to release $10,000 (in the form a a Cashiers Check) from Escrow to seller before COE for seller's moving expenses, subtracted from Seller proceeds, and seller to have 20 days to move after release upon seller signing a grant deed to held at escrow. $500 daily per diem penalty paid by Seller or buyers should escrow delay to close within 20 days after release of $10,000 moving expense days as a result of seller's delay to turn in property vacant or buyers failure to bring funds to close of $330,000 plus any buyer's costs . If escrow fails to close as a result of buyer failing to deposit sufficient funds by June 30, 2010, this sale shall be null and void and buyer will forfeit $10,000 released for moving expense._

_All terms in any prior counter offers not included herein or different than herein are void. The terms of this final counter offer supersede any terms of the purchase agreement that are inconsistent with this final counter offer._

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _____

Buyer/Tenant _____
Fahim Mansour, Wesam Hijazim

Buyer/Tenant _____
Omar Chahine

Date _May 19, 2010_

Seller/Landlord _____
Craig M Lytle

Seller/Landlord _____
Anita S Lytle

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM-11 REVISED 10/01 (PAGE 1 OF 1)

Reviewed by _____
Broker or Designee _____ Date _____

**ADDENDUM (ADM-11 PAGE 1 OF 1)**

Agent: Steve Timper    Phone: (310) 993 - 7967    Fax: (310) 601 - 1823    Prepared using zipForm® software
Broker: Home Team Realty 23500 Hawthorne Blvd. #130 Torrance, CA 90505

EXHIBIT 5



## Re: PROPOSED SALE

Wednesday, May 12, 2010 7:10 AM

**From:** "patrick@patrickmcclellan.com" <patrick@patrickmcclellan.com>
**To:** "Craig Lytle" <cmll2000@yahoo.com>

OK...make the motion and we'll file something in support of it. If you are going to shorten time I would appreciate it if you could ask for a hearing during the week of June 7th.
Yes the estate is willing to sell you the Frey, Parker and Valenzuela claims...say 50 cents on the dollar.
Sent via BlackBerry from T-Mobile

**From:** Craig Lytle <cmll2000@yahoo.com>
**Date:** Wed, 12 May 2010 06:04:54 -0700 (PDT)
**To:** Patrick McClellan<patrick@patrickmcclellan.com>
**Subject:** Re: PROPOSED SALE

First a debtor can also bring a motion to sell free and clear. 2d Escrow will be instructed to pay the estate the "the sum of $75,435 paid directly from escrow " as set forth in the settlement agreement and order. Everything will be paid as set forth in the order except the DBPP will take back a note ifor $125k nstead of full payment

On an unrelated matter - don't you remember that I told you that Weijer didn't owe me anythingandthat I mistakenly listed her in my accounts receivable

Third is the estate interested in selling the Frey, Parker or Valuenza claims to my DBPP

Best regards,

Craig M. Lytle
Attorney at Law
Phone 310.376.2253
Fax 310.379.9306

--- On **Wed, 5/12/10, Patrick McClellan <patrick@patrickmcclellan.com>** wrote:

> From: Patrick McClellan <patrick@patrickmcclellan.com>
> Subject: PROPOSED SALE
> To: "'Craig Lytle'" <cmll2000@yahoo.com>
> Date: Wednesday, May 12, 2010, 5:47 AM
>
> Craig:
>
> I have now had a chance to look at the proposed sale you forwarded May 10th. Please provide me with an estimated closing statement that shows all of the disbursements you propose to be made from the proceeds. It appears to me that numbers don't work in light of the Order Approving Compromise.
>
> Additionally, I don't see any way to get an Order to Sell Free and Clear of Liens unless the Trustee is the Seller...there is no statutory basis for such an order if you are the seller. I believe that any sale would have to be arranged between the buyer and the trustee directly.
>
> Finally, as you know, any sale is subject to Bankruptcy Court approval, which cannot be had without

notice and a hearing.  There is no way that a sale can be consummated within 20 days even if we were to agree on the terms and get all the lienholders' approvals.

I look forward to receiving the estimated closing statement.

PKM

EXHIBIT 6

RECEIPT NO.    1413

Keller Williams Palos Verdes Realty, Escrow Division
500 Silver Spur Road, Suite #303
Rancho Palos Verdes, CA 90275
(310) 544-7537

ESCROW NO.          DATE
010302-PW           05/12/2010

Property:    1006 Slauson Lane, Redondo Beach, CA 90278

RECEIVED    Fahim Mansour
OF

AMOUNT
$******14,000.00

FOURTEEN THOUSAND AND 00/100 DOLLARS --------------------------------------------------------------------

| | ABA Number | Check Number | Description |
|---|---|---|---|
| CASH | | | |
| CHECK | 16-7971 | 2132 | Good Faith |
| CASHIER'S CHECK | | | |
| DRAFT | | | |
| OTHER | | | |

Checking Account Number 01060110939

Received on behalf of   BUYER/BORROWER

BY
Patrice Walter

---

**FAHIM MANSOUR**
7727 W 81ST STREET
PLAYA DEL REY, CA 90293

010302-PW

2132
16-7971/3220 6

5-11-10
Date

Pay to the   KWPV Realty Escrow                    | $ 14,000
Order of
FOURTEEN THOUSAND DOLLARS                  Dollars

Western

(510) 981 2396

For  Slauson purchase

⑆322079719⑆01060110939⑈  2132